DIAZ, Justice,
concurring:
¶ 19. Although I concur with the majority’s opinion and holding to reverse the decision of the Standing Committee on Ethics and remand for further consideration, I write separately to address not only the nature of the Committee’s holding, but the tone in which it was delivered.
¶20. The sole objective sought throughout our extended judicial system is a just result to each problem posed by our citizenry. Our citizens demand, and of course, deserve that their voices be heard and considered by their peers, men and women who share an equal understanding of human affairs. Holland v. State, 587 So.2d 848, 877 (Miss.1991) (Hawkins, P.J., dissenting). It is left to those who sit in judgment to discern from the facts and law presented which result best affords those seeking our guidance a “just” result. More often than not, these peers will be members of a jury or a trial judge. Occasionally, as is the case before us today, they will be members of a committee, unique in both their stated mission and expertise in matters at law.
¶ 21. It is an accepted notion that judgment as to what is “just” or “right” is fluid, changing with the times and circumstances that shape it. Id. at 877. Of paramount importance is the principle that when devising the just result, the judiciary avoid condescension in its decision. I believe that some of the language found in the Committee’s decision violated this simple principle, seeming as undignified as it was arrogant.
¶ 22. Specifically, I take issue with the Committee, in justifying its denial of payments for health insurance, noting that “tens of thousands” of people in Mississippi and “millions” nationwide are without health insurance and yet “somehow manage to survive.” Similar statements lead one to believe that the Committee prefers the pound of cure to the ounce of prevention. Further comments recognizing that “since the client has qualified for food stamps, then the client may well qualify for Medicaid” suggest placing more responsibility upon an already overly burdened program with limited resources. Such afterthoughts presume too much about a situation the Committee knows too *939 little about, and they are unnecessary in resolving the issue presented.
¶ 23. The Committee also pointed out that the client “apparently has sufficient funds to meet minimal living expenses due to the fact that the only relief sought to by the petition is the payment of a monthly health insurance premium.” The Committee concluded that because the client was not “facing homelessness, starvation or other serious deprivation,” the request should be denied. To be sure, lack of health insurance is not as serious a deprivation as homelessness or starvation. However, if one views this request by that standard, a skewed perspective results.
¶24. Health insurance, to the tens of thousands of Mississippians and millions nationwide who do possess it, is often as important to them and their families as the roof over their heads or the food on their plates. They depend upon it to avoid being forced to choose between paying the ever increasing cost of treating an unexpected illness and keeping the roof over their heads. A court or committee sitting in judgment engenders little respect from those invoking its jurisdiction when it flippantly disregards these daily truths.
BANKS, P. J., joins this opinion. McRAE, P.J., and EASLEY, J., join this opinion in part.